UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW FABAL, | : | Case No. 2:22-cv-3508 |
| | : | |
| Petitioner, | : | |
| | : | District Judge Algenon M. Marbley |
| vs. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| WARDEN, NOBLE | : | |
| CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Noble Correctional Institution, has filed *a pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and the return of writ. (Doc. 1, 7). Also before the Court is Petitioner's Motion to hold this case in abeyance, which is opposed by Respondent. (Doc. 15, 16).

For the reasons stated below, it is recommended that the petition be denied with prejudice on the grounds that Petitioner has procedurally defaulted and waived his grounds for relief. It is further recommended that his Motion to stay be denied.

**I. FACTUAL BACKGROUND**

The Ohio Court of Appeals set forth the following set of facts leading to Petitioner's convictions and sentence:[1]

> {¶ 4} On July 15, 2017, Ali Ikhayel operated two automobile-related businesses on the far west side of Columbus—one at 3334 West Broad Street ("3334")—the other

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

next door at 3344 West Broad Street ("3344"). Appellant worked for Ikhayel as a subcontractor performing body work in the garage inside 3344.

{¶ 5} Shortly after 10:30 p.m. on July 15, 2017, Denise Nunziato was struck and killed by an automobile as she crossed West Broad Street near the 3334/3344 businesses. The driver left the scene without stopping. Bystanders told responding Columbus Police Officers Karen Blair and Ricky Anderson that footage from a security camera at 3334 showed a yellow car strike Nunziato and then drive into the garage at 3344. The group further reported that the yellow car belonged to a person named "Andrew." (Feb. 3, 2020 Tr. at 109.) After obtaining permission to enter 3344, the officers observed a yellow car parked inside the garage which appeared to recently have sustained significant damage to the windshield and front end. The officers found no one inside the garage.

{¶ 6} Columbus Police Detective Connie Brant led the investigation into the accident. Brant took numerous photographs of the accident scene and the yellow car. Pursuant to a valid search warrant and at Brant's direction, the yellow car was towed to a police garage. Photographs taken there depict Brant demonstrating that several large pieces of debris found at the accident scene appeared to have been dislodged from the yellow car during the accident. Pursuant to examination of the vehicle by the crime scene search unit, several fingerprints were lifted from the hood of the car; two were determined to belong to appellant. At trial, Brant acknowledged that it was difficult to determine when any of the fingerprints, including appellant's, had been left on the car. She further acknowledged that the fingerprints other than appellant's could not be identified and that no attempts were made to obtain fingerprints from the car's interior.

{¶ 7} Brant also reviewed the security footage obtained from 3334 and two nearby businesses. According to Brant, the security footage revealed that the car that struck Nunziato was "very, very bright yellow and * * * moving very fast * * * [r]elative to the traffic in general that was on the roadway." *Id.* at 140. Brant further testified that the speed limit at the accident scene was 35 miles per hour.

{¶ 8} Brant's investigation revealed that the yellow car was registered to Walter Salvador Guardado Abarca. At trial, Abarca testified that during an interview with police, he averred that the yellow car was "under my name but it was a long time ago." *Id.* at 158. He further stated that he sold the car with the help of his brother but did not know who purchased it.

{¶ 9} Brant also interviewed several witnesses—Ikhayel, Nicole Leard, Charles Yeck, and Dominic Brewer—all of whom testified at trial. Ikhayel identified appellant at trial as the person he knew as "Andrew" who worked at 3344 and with whom he interacted on a regular basis. Appellant had a key to the 3344 garage and

2

kept a small yellow car there. Ikhayel often saw appellant driving the car and "believe[d]" appellant owned it. *Id.* at 179. Ikhayel further stated that the police notified him of the accident shortly after it occurred. He drove to his West Broad Street businesses and reviewed the footage recovered from the security camera at 3334. When shown the security footage at trial, Ikhayel asserted that it depicted a person who "looked like Andrew" close the hood of the yellow car before driving it away. (Feb. 4, 2020 Tr. at 184.)

{¶ 10} Leard testified that she was at 3334 visiting her fiancé, Brewer, at the time of the accident. Although she did not witness the accident, she reviewed the security footage from 3334. Leard recognized the yellow car that struck Nunziato as one she had seen near 3334 and 3344 on two prior occasions; however, she acknowledged that she "didn't really get a good look at the driver." *Id.* at 169.

{¶ 11} Yeck testified that late in the evening on July 15, 2017, he observed a yellow car travel eastbound on West Broad Street and strike Nunziato. The impact dislodged several pieces of the car, including the front bumper, and caused the driver to momentarily lose control of the vehicle. Once the driver regained control, he made a U-turn, stopped momentarily, looked at Nunziato's body, and then drove westbound on West Broad Street. Yeck called 911 and reported the accident; he remained at the scene and described the driver as an African American man, approximately 25 to 30 years old, sitting "really low in his car." *Id.* at 195. The driver had a "flattop fade," which Yeck described at trial as "real tight on the side of the hair," with no "braids" or "dreads." *Id.* at 195, 202. On July 23, 2017, eight days after the accident, the police showed Yeck a photo array, which, according to Brant's testimony, included a photograph of appellant wearing "little curly cues on the sides" of his head. *Id.* at 137. Yeck testified that he was unable to identify the driver from the photo array and that he presently could not identify the driver.

{¶ 12} Brewer testified that he worked at 3334. He often saw a person he knew as "Andrew" working in the garage located next door at 3344, and the two occasionally engaged in conversation. At trial, Brewer identified appellant as "Andrew." *Id.* at 218. According to Brewer, appellant drove a yellow car that "was always over" at 3344. *Id.* at 226. To Brewer's knowledge, appellant did not permit anyone else to drive the yellow car.

{¶ 13} On July 15, 2017, Brewer and his cousin were working at 3334 late in the evening. He observed 10 to 15 people having a cookout next door at 3344. He did not attend the cookout and because it was dark, he could not discern the race or ethnicity of the attendees or whether appellant was there. He eventually became aware that there had been an accident on West Broad Street. He did not hear or see the accident because he was working inside 3334. After the accident, Brewer's cousin facilitated police entrance into the garage at 3344. The yellow car was inside

3

the garage; neither appellant nor anyone else was around. Along with the police, Brewer reviewed the security footage obtained from the security cameras at 3334. At that time, Brewer could not identify appellant because he was standing behind several police officers and "didn't see [the video] close enough." *Id.* at 237. However, Brewer again reviewed the security footage from 3334 and the other businesses in preparation for his trial testimony. Pursuant to that review, Brewer testified that a person who "looked like Andrew" closed the hood on the yellow car and drove away. *Id.* at 228, 237. Thereafter, the yellow car struck Nunziato and then returned to 3344. Brewer averred that although the driver's face was "too blurred" to be recognized, the driver's body shape and size matched appellant's. *Id.* at 240. Brewer also testified that the security footage depicted a sandal on the street near the accident scene, and that appellant "always wore sandals." *Id.* at 227.

{¶ 14} In addition to the foregoing testimony, the state presented the surveillance footage from the security cameras at 3334 and the two neighboring businesses. (State's Ex. 95.) That footage depicts a group of young African American males gathered around a small yellow car with a raised hood parked in a driveway adjacent to the 3334/3344 building. One of the men closes the hood, enters the car, and drives away. Very shortly thereafter, the yellow car, traveling eastbound at a high rate of speed, strikes Nunziato as she attempts to cross West Broad Street. The impact causes Nunziato's body to be tossed into the air and thrown a considerable distance. The driver does not stop at the scene; rather, he returns to 3344 very shortly after the accident and drives behind the building.

{¶ 15} The state also presented numerous exhibits as well as 13 stipulations pertaining to those exhibits, including fire department records, police procedures and processes related to the investigation, bureau of motor vehicle records, and the coroner's report. The stipulated evidence, along with the attendant exhibits, established, among other things, that at the time of the accident, appellant's driver's license was under suspension, the yellow car was traveling 66 miles per hour when it struck Nunziato, Nunziato's body was thrown 10 feet into the air, was airborne for 89 feet, and was propelled a total of 131 feet from the point of impact, and the car was registered to Abarca.

{¶ 16} At the conclusion of the state's case, appellant moved for judgment of acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion. Thereafter, appellant rested his case without presenting evidence and renewed his Crim.R. 29 motion. The trial court again denied the motion.

{¶ 17} Following deliberations, the jury returned verdicts finding appellant guilty as charged in the indictment. At a sentencing hearing held immediately after the verdicts were rendered, the trial court sentenced appellant to eight years'

incarceration on the aggravated vehicular homicide conviction, and three years' incarceration on the failure to stop after an accident conviction. The court ordered the sentences to be served consecutively, resulting in an aggregate prison term of 11 years. The trial court also imposed a lifetime suspension of appellant's driver's license. The trial court memorialized the conviction and sentence in a judgment entry filed February 7, 2020.

(Doc. 6, Ex. 7 at PageID # 76–79).

### II.     PROCEDURAL HISTORY

#### State Trial Proceedings

On September 15, 2017, the Franklin County, Ohio, grand jury returned a two-count indictment charging Petitioner with one count each of aggravated vehicular homicide and failure to stop after an accident. (Doc. 6, Ex. 1). Petitioner, through counsel, entered a plea of not guilty to the charges in the indictment. (Doc. 6, Ex. 2). On February 5, 2020, following a jury trial, Petitioner was found guilty as charged in the indictment. On the same date, Petitioner was sentenced to serve a total prison sentence of eleven years in the Ohio Department of Rehabilitation and Correction. (Doc. 6, Ex. 3).

#### Direct Appeal

Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals. (Doc. 6, Ex. 4). In his appellate brief, petitioner raised the following two assignments of error:

1. The trial court violated Defendant-Appellant's rights to due process and a fair trial when in the absence of sufficient evidence the trial court found Defendant-Appellant guilty of aggravated vehicular homicide and failure to stop after an accident.

2. Defendant-Appellant was deprived of due process of law and a fair trial as his convictions for aggravated vehicular homicide and failure to stop after an accident were against the manifest weight of the evidence.

(Doc. 6, Ex. 5 at PageID # 31). On May 25, 2021, the Ohio Court of Appeals overruled Petitioner's

assignments of error and affirmed the judgment of the trial court. (Doc. 6, Ex. 7).

On August 13, 2021, Petitioner filed a notice of delayed appeal and motion for leave to file a delayed appeal, which was granted by the Ohio Supreme Court. (Doc. 6, Ex. 8, 9, 10). In his memorandum in support of jurisdiction, plaintiff raised as propositions of law the same two assignments of error raised on direct appeal to the Ohio Court of Appeals. (*See* Doc. 6, Ex. 11 at PageID # 115). On December 28, 2021, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 6, Ex. 13).

### Post-Conviction Petition

Meanwhile, on October 23, 2020, petitioner filed a pro se petition for post-conviction relief. (Doc. 6, Ex. 14). Petitioner asserted that he was denied the effective assistance of counsel based on counsel's failure to present evidence of the victim's alleged intoxication and failure to yield to oncoming traffic. (*See id.* at PageID # 147–48).

On November 10, 2020, the trial court denied Petitioner's post-conviction petition. (Doc. 6, Ex. 16). Petitioner did not seek appellate review of the trial court's decision.

### Application to Reopen

On August 18, 2021, Petitioner filed a *pro se* application to reopen his appeal pursuant to Ohio App. R. 26(B). Petitioner subsequently moved to amend the application, which the Ohio Court of Appeals granted. (*See* Doc. 6, Ex. 17; *see also* Doc. 6, Ex. 21 at PageID # 235). In the amended application, Petitioner argued that his appellate counsel was ineffective for failing to raise the following four assignments of error on direct appeal:

1. Fabal was denied the effective assistance of appellate counsel when his appellate counsel failed to raise on direct appeal issues regarding sufficient evidence of guilt for aggravated vehicular homicide and failure to stop after an accident, in violation

of his Sixth and Fourteenth Amendment Rights under the United States Constitution.

2. Fabal was denied the effective assistance of appellate counsel when his appellate counsel failed to raise on direct appeal issues regarding his convictions for aggravated vehicular homicide manifest weight of the evidence, in violation of his Sixth and Fourteenth Amendment Rights under the United States Constitution.

3. Fabal was denied the effective assistance of appellate counsel when his appellate counsel failed to raise on direct appeal issues regarding his trial counsel's failure to challenge the charge of aggravated vehicular homicide, in violation of his Sixth and Fourteenth Amendment Rights under the United States Constitution.

4. Fabal was denied the effective assistance of appellate counsel when his appellate counsel failed to raise on direct appeal issues regarding the court's failure to correctly find that the pedestrian was negligent *per se* because she failed to comply with both R.C. 4511.46(B) and R.C. 4511.48(A), in violation of Fabal's Sixth and Fourteenth Amendment Rights under the United States Constitution.

(Doc. 6, Ex. 17 at PageID # 195).

On November 30, 2021, the Ohio Court of Appeals denied Petitioner's application. (Doc. 6, Ex. 19). Petitioner did not appeal the decision to the Ohio Supreme Court.

**Federal Habeas Corpus**

On September 28, 2022, Petitioner filed a federal habeas corpus petition in this Court. (Doc. 1). Petitioner raises the following four grounds for relief, verbatim, in the petition:

**GROUND ONE**: The ineffective assistance of Trial Counsel

Supporting Facts: The fact that defense counsel was ineffective in his representation of the defendant for failing to raise the fact that defendant voluntarily turned himself in to the authorities. Defense counsel failed to disclose the fact that the victim violated the traffic laws of the State of Ohio Trial counsel refusal to introduce facts that the victim was impaired by the illegal use of drugs found in the victim system from the state's toxicology report. Defense counsel refuse to include the pre-sentence investigation report done by the trial court itself. and put into evidence on behalf of the defendant to evaluate his psychological profile which trial counsel also refused to put into evidence. Defense counsel refused to consult with the defendant's private investigator and her investigative report of the accident scene

7

or to call the investigator as a witness for the defense. Defendant request a new defense counsel the trial judge refused to allow the defendant right to be heard and barred the defendant from the court room due to the fact that defendant requested to have defense counsel be removed because defense counsel also refused and rebuffed the attempt have the defendant's input into the trial ad defense counsel became combative in the use of the defendant's prepared strategy to attach the prosecution case against the defendant.

**GROUND TWO**: The ineffective assistance of Appellate Counsel

Supporting Facts: Petitioner was denied the effective assistance of appellate counsel when his appellate counsel failed to raise on direct appeal issue regarding his conviction for aggravated vehicular homicide manifest weight of the evidence, in violation of Petitioner's Sixth and Fourteenth Amendment under the United States Constitution.

**GROUND THREE**: The ineffective assistance of Appellate Counsel

Supporting Facts: Petitioner was denied the effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal issues regarding Petitioner's trial counsel's failure to challenge the charge of aggravated vehicular homicide, in violation of Sixth and Fourteenth Amendments Rights under the United States Constitution and that Appellate failed to challenge the manifest weight of the evidence.

**GROUND FOUR**: The ineffective assistance of Appellate Counsel

Supporting Facts: The Appellate first and for most failed to address the ineffectiveness of trial counsel on the defendant direct appeal on the fact that the trial court refused associate the contributory negligence of the pedestrian for also violating O.R.C.§ 4511.46(B) and O.R.C. § 451148(A) and §4511.481(A) under the Sixth and Fourteenth Amendments to the United States Constitution and that Appellate failed to challenge the manifest weight of the evidence. §4511.48(A) under the Sixth and Fourteenth Amendments to the United States Constitution and that Appellate failed to challenge the manifest weight of the evidence.

(Doc. 1 at PageID # 3–4).

Respondent filed a return of writ in opposition to the petition (Doc. 7). According to respondent, Petitioner's grounds for relief are procedurally defaulted and without merit.

8

### III. THE PETITION SHOULD BE DENIED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants and to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). To satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). A claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99–100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847–48; *Harris v. Reed,* 489 U.S. 255, 260–62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an

"adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260–62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750; if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167–69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). If the three prongs are met, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from the procedural default

or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, Petitioner procedurally defaulted his grounds for relief by failing to present any of his claims to the Ohio Supreme Court. *See O'Sullivan,* 526 U.S. at 847–48 (holding that failure to raise a claim on discretionary review to the state supreme court results in a procedural default).

In Ground One of this petition, Petitioner contends that his trial counsel was ineffective for failing to present specified evidence in his defense at trial. (*See* Doc. 1 at PageID # 3). Namely, Petitioner claims that counsel should have raised that Petitioner voluntarily turned himself in; that the victim allegedly violated traffic laws and was impaired at the time of the accident; and that defense counsel failed to use a pre-sentence investigation report to evaluate Petitioner's psychological profile and refused to consult with Petitioner's private investigator or call her as a witness. (*Id.*). While Petitioner argued in his October 23, 2020, post-conviction petition that trial counsel was ineffective for failing to present a defense that the victim was allegedly intoxicated and failed to yield to oncoming traffic, Petitioner did not appeal the trial court's denial to the Ohio Court of Appeals or otherwise raise this claim in the Ohio Supreme Court.[2] As such, this claim is procedurally defaulted.

In Grounds Two through Four, Petitioner argues that appellate counsel was ineffective for

---

[2] As argued by Respondent (*see* Doc. 7 at PageID # 250–51), to the extent that Petitioner raises claims in Ground One that were not included in the post-conviction petition, Petitioner procedurally defaulted these claims by failing to raise them at any point during state-court proceedings.

11

failing to challenge on direct appeal his aggravated vehicular homicide conviction as being against the manifest weight of the evidence (Ground Two); trial counsel's failure to challenge the aggravated vehicular homicide charge (Ground Three); and trial counsel's failure to raise issues regarding the alleged contributory negligence of the victim (Ground Four). Petitioner raised these claims in his August 18, 2021, application to reopen his appeal, but similarly procedurally defaulted them by failing to seek further review from the Ohio Supreme Court. *See Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (holding that failure to appeal the denial of a Rule 26(B) application to the Ohio Supreme Court results in a procedural default).

Because Petitioner failed to provide the state's highest court with an opportunity to correct the alleged violations of his constitutional rights, he procedurally defaulted and waived his grounds for relief, absent a showing of cause and prejudice for the default in the state courts or that a fundamental miscarriage of justice will occur if the claim is not considered. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. Under the cause and prejudice test, "'cause' . . . must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488). "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing that a factual or legal basis for a claim was not previously available." *Wilson v. Hurley,* 382 F. App'x 471, 478 (6th Cir. 2010) (citing *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991)).

Ineffective assistance of appellate counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim itself is procedurally defaulted. *See Murray,*

12

477 U.S. at 488–89; *see also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In this case, because Petitioner has procedurally defaulted his ineffective assistance of appellate counsel claims in Grounds Three and Four, the ineffective assistance of appellate counsel cannot serve as cause to excuse the procedural default of Ground One of the petition.

Petitioner has otherwise failed to demonstrate cause to excuse the default of his claims. As discussed below, in response to the return of writ, Petitioner filed a motion to hold this case in abeyance or dismiss it without prejudice. Petitioner claims that because the trial court failed to issue findings of fact and conclusions of law when it denied his October 23, 2020, post-conviction petition, the trial court's order is not final, and he was unable to appeal the decision or exhaust his claims. (*See* Doc. 15). However, the Ohio Supreme Court has clarified—prior to the denial of Petitioner's post-conviction petition—that "a trial court's failure to issue findings of fact and conclusions of law does not affect a petitioner's ability to appeal a judgment dismissing or denying postconviction relief but is instead an error that may be remedied through an appeal." *State ex rel Penland v. Dinkelacker*, 164 N.E.3d 336, 340 (Ohio 2020) (overruling the case law upon which petitioner relies). Accordingly, the trial court's alleged failure to issue findings of facts or conclusions of law did not deprive Petitioner of the ability to appeal the decision and does not serve as cause for his failure to fairly present the claim to the Ohio courts.

Finally, Petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495–96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498.

13

In sum, the Undersigned finds that Petitioner has procedurally defaulted and waived his grounds for relief by failing to present the claims through the requisite levels of state appellate review to the Ohio Supreme Court. *See O'Sullivan,* 526 U.S. at 847–48.

### IV. THE MOTION TO STAY AND AMEND SHOULD BE DENIED.

In response to the return of writ, Petitioner filed a motion seeking to hold this case in abeyance or dismiss it without prejudice. Petitioner seeks a stay "in order to permit the Petitioner to exhaust state remedies." (Doc. 15 at PageID # 306). As noted above, Petitioner claims that because the trial court failed to issue findings of fact and conclusions of law in denying his October 23, 2020, post-conviction petition, the trial court's order is not final, and he was unable to appeal the decision or exhaust his claims. On this basis, he seeks a stay to return to the state courts to force the trial court to issue the findings of facts/conclusions of law and appeal the decision.

An application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts through which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both unexhausted

14

claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

The 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) "preserve[s] *Lundy*'s total exhaustion requirement" and "impose[s] a one-year statute of limitations on the filing of federal habeas petitions." *Rhines v. Weber,* 544 U.S. 269, 275 (2005). Some federal courts, including the Sixth Circuit, have adopted a "stay-and-abeyance" procedure to ensure habeas review is not precluded in cases where a timely federal habeas petition is dismissed on exhaustion grounds, and the petitioner subsequently returns to federal court to present his claims in a renewed petition after exhausting his state remedies only to find that his claims are now barred from review by the statute of limitations. 28 U.S.C. § 2244(d)(1); *see, e.g.*, *Griffin v. Rogers,* 308 F.3d 647, 652, n.1 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d 777, 778–81 (6th Cir. 2002).

In *Rhines,* the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases but such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." 544 U.S. at 276. The Court pointed out that one of AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003); *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In addition, AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276–77 (quoting *Lundy,* 455 U.S. at 520).

The Court further said:

15

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277–78.

Yet this case is not a "mixed" petition containing exhausted and unexhausted claims. As detailed above, Petitioner raised Ground One in his October 23, 2020, post-conviction petition and Grounds Two through Four in his 26(B) application to reopen his direct appeal. In both instances, Petitioner failed to appeal the decision through the requisite levels of state appellate review to the Ohio Supreme Court and therefore no longer has any avenues of relief available to him. *See State v. Nichols*, 463 N.E.2d 375, 78 (Ohio 1984) ("a delayed appeal pursuant to App. R. 5(A) is not available in the appeal of a postconviction relief determination"); *Nesser v. Wolfe*, 370 F. App'x 665, 670 (6th Cir. Mar. 25, 2010) ("Ohio does not permit delayed appeals in postconviction proceedings"); *see also* Sup. Ct. Prac. R. 7.01(A)(4)(c) ("The Clerk shall refuse to file motions for delayed appeal involving postconviction relief or App.R. 26(B)."). Because Petitioner has

16

procedurally defaulted and waived his grounds for relief, the Court has no basis to issue a stay in this action, and his Motion should be denied.

The Undersigned's recommendation is not altered by Petitioner's claim that his October 23, 2020, post-conviction petition is not final due to the trial court's failure to issue findings of fact and conclusions of law. Petitioner claims that he has an avenue of relief by returning to the state courts to force the trial court to issue the findings of facts/conclusions of law and then appealing that decision. However, as noted above, Petitioner's argument is foreclosed by the Ohio Supreme Court's ruling in *Dinkelacker*, holding that "a judgment granting or denying postconviction relief is a final, appealable order." 164 N.E.3d at 342. Therefore, because the October 23, 2020, denial was a final, appealable order, Petitioner's argument is meritless.

Finally, Petitioner's Motion also includes a request "to include an exhausted Claim that was inadvertently omitted from the Petition." (Doc. 15). However, Petitioner has not included a proposed amended petition and fails to specify the new ground for relief or otherwise inform the Court of how Petitioner seeks to amend the petition. *See* Fed. R. Civ. P. 7(b); Rule 12 of the Rules Governing Section 2254 and 2255 Cases ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). *See Williams v. Zumbiel Box & Packaging Co.*, No. 04-CV-675, 2005 WL 8161971, at *1 (S.D. Ohio Feb. 3, 2005) ("To meet the particularity requirements of Rule 7(b), 'a complete copy of the proposed amended complaint must accompany the motion [for leave to amend] so that both the Court and opposing parties can understand the exact changes sought.'") (quoting *Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y. 1993)).

As such, Petitioner's Motion to stay and amend should be denied.

17

**IT IS THEREFORE RECOMMENDED THAT:**

1. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice and Petitioner's Motion to stay and amend (Doc. 15) be **DENIED**.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[3]

3. With respect to any application by Petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral

---

[3] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether Petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date:  <u>November 30, 2023</u>                                        *s/Kimberly A. Jolson*                   
                                                                                  Kimberly A. Jolson
                                                                                  United States Magistrate Judge